# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No 13-00084-09-DGK |
| ) | |
| VINCENT DEE HART, ) | |
| ) | |
| Defendant. ) | |

## SENTENCING MEMORANDUM

COMES NOW Defendant, Vincent Dee Hart, (hereinafter "Mr. Hart"), by counsel, and offers this memorandum relating to the sentencing scheduled for June 29, 2015:

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Hart entered a plea of guilty to a lesser included charge of Count 1 and Count 2 charging him with conspiracy to distribute a mixture or substance containing a detectable amount of "PCP" and conspiracy to commit money laundering on November 10, 2014 before this Honorable Court. A plea agreement between the Government and the Defendant was entered into and a factual basis was contained in that agreement.

Specifically the factual basis sets out that Mr. Hart was involved in the "PCP" conspiracy by helping to transport from California to Kansas City, Missouri

1

for Stephon Donte Williams. Mr. Hart and another codefendant Taylor had previously made trips to Kansas City for Mr. Williams in which they had transported drugs and Mr. Hart was unavailable to make another trip in the time frame. Williams, Taylor and Mr. Hart assisted each other by arranging for Mr. Taylor's girlfriend Arnissa Brooks to transport for Mr. Williams. The individuals that were making the trips to Kansas City were being paid for making the transport. Mr. Taylor supplied the ticket for Mrs. Brooks and rode with her to the station and walked her in to the train station in California. Williams was the supplier of the PCP, cocaine and marijuana that Mrs. Brooks was transporting to Kansas City.

On August 18, 2011, Brooks was arrested at the Kansas City Amtrak station in possession of the above listed drugs and a cellular phone that contained the names and numbers of Taylor and Williams. A telephone analysis showed a number of calls between Brooks and Williams and Taylor. Phone analysis showed a number of contacts between Williams and Taylor and Hart. The parties agreed in the presentence report that Mr. Hart was responsible for not less than a drug level of 24 and agreed to the two level enhancement for the money laundering plea. The parties were free to advocate their position about drug level at sentencing.

A presentence report was conducted and in that report the base offense level of Mr. Hart was considered to be a base level of 30. The parties are in agreement on this finding and make no objection regarding this base offense level. He

received a two point addition under 2S1.1(b)(2)(B) for the money laundering conviction as anticipated and agreed upon. The final total offense level after acceptance is a total offense level of 29 to which the defendant objects.

The presentence report had a total offense level of 29 with a criminal history category of IV and a guideline range of imprisonment of 121 to 151 months. The defendant submits information regarding sentencing factors under 18 U.S.C. § 3553(a), variance arguments, letters of support, and objections to the PSR for the Courts consideration in sentencing Mr. Hart. Mr. Hart is asking the Court to sustain his objections and sentence him to a sentence of 87 months and in the alternative if the Court does not sustain his objections to grant Mr. Hart a variance to a sentence of 87 months. This is a sentence that is sufficient but not greater than necessary in order to satisfy the goals of sentencing.

## OBJECTIONS TO PRESENTENCE REPORT

**(1) The defendant should have been given a mitigating role of a minor participant under 3B1.2(b) which would have resulted in a 2 level decrease in the total offense level to 27.**

The issue presented in this objection to the presentence report is that Mr. Hart believes that he should have been given the 2 level reduction for mitigating role of a minor participant under 3B1.2(b) of the Federal Sentencing Guidelines.

3

Mr. Hart filed a timely objection and the probation office indicated that they did not believe the defendant qualifies for a role reduction in this case. The basis of that finding was that Mr. Hart was unable to make the trip to Kansas City that Arnissa Brooks made because he had recently returned from a transport. Mr. Hart assisted Stephon Williams and Arin Taylor by helping arrange for Mrs. Brooks to make the transport to Kansas City. The defendant's involvement with the codefendants/co-conspirators appears to have spanned at least several weeks in July and August 2011. *See PSR Probation Officer's Response*

If the defendant was a minor participant in any criminal activity, decrease by 2 levels. U.S.S.G. § 3B1.2(b). The application notes of this section state:

> "(A) Substantially Less Culpable than Average Participant.—This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant.
> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline."

U.S.S.G. § 3B1.2, comment. (n.3(A)). The guidelines reference that this is a fact based determination that is based on the totality of the circumstances. *Id.*

4

This is a hot issue in federal sentencing as this particular section of the guidelines is currently being proposed for change effective November 1, 2015, subject to intervention by Congress. This amendment is a result of the Commission's study of §3B1.2 (Mitigating Role). Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who performed similar low-level functions (and that rates of application vary widely from district to district). For example, application of mitigating role varies along the southwest border, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of the 2-, 3-, and 4-level adjustments. *See* Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary (effective November 1, 2015) p. 34.

The proposed changes in the guideline section make changes to the application notes. Specifically, it inserts a new paragraph in application note 3 that gives the court a list of non-exhaustive factors that should be considered when determining if the mitigating role should apply.

" In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity:"

*See* Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary (effective November 1, 2015) p. 33.

Mr. Hart believes based on a fact based determination that he should have qualified for the 2 level reduction for mitigation role under 3B1.2(b). Based on the evidence as indicated in the presentence report Mr. Hart participated in the conspiracy by agreeing to transport drugs to Kansas City for another co-conspirator. Mr. Hart and another codefendant Mr. Taylor had both made previous trips to Kansas City. Mr. Taylor was in a relationship with Mrs. Brooks and asked her to make a transport for Mr. Williams to Kansas City. Mr. Taylor paid for the ticket, and rode with her to the train station and walked her into the station in California. The drugs were supplied by Mr. Taylor. Mr. Hart in no way suggests that this was the only trip and admits that he had made a previous trip.

6

However, Mr. Hart knew little about the structure and scope of the criminal activity, Mr. Hart did not plan in or organize the criminal activity. His expenses for travel were paid by other co-defendants and he was paid to complete the transport at a flat rate. He had no decision making authority over any of the participants in this case. A minor role adjustment of 2 levels is justified under the facts in this case.

**(2) The defendant believes that his criminal history conviction in paragraph 45 should have been scored under 4A1.1(c) as 1 point instead of 2 points under 4A1.1(b), because he did not receive a sentence of imprisonment of more than 60 days.**

The issue presented by Mr. Hart in his objection to paragraph 45 of his presentence investigation report is whether or not his sentence to the weekender/workers program is considered a sentence of imprisonment for purposes of criminal history scoring. Mr. Hart has been assessed 2 criminal history points under 4A1.1(b) of the guidelines for receiving a sentence of imprisonment of 180 days in custody as a condition of probation. A timely objection has been filed contesting the scoring of the criminal conviction under 4A.1.1(b) and believes that the proper scoring under the guidelines and the circumstances of this case should be 1 criminal history point under 4A.1.1(c).

Mr. Hart was charged with forging or altering a narcotic prescription under HS 11368 in San Bernardino, California. On July 6, 2009, Mr. Hart was arraigned on the charges. Mr. Hart entered a plea of guilty with a plea agreement on August 20, 2009, and a presentence investigation was ordered. The sentencing was conducted on September 18, 2009. Mr. Hart was granted supervised probation for a period of 36 months with a list of terms and conditions. The relevant term and condition is term number 1 in the probation order. The order reads as follows: " Serve 180 days in a San Bernardino county jail facility, with credit for time served, a matter of 4 days, plus conduct credit pursuant to 1-PC4019 nd abide by all rules and regulations of the facility without the possibility of county parole. Report to Glen Helen Rehabilitation Center on 3pm 1/8/10. Eligible for weekender/work release program. Complete by 07/31/2011."

Mr. Hart worked in the weekender/work release program. At no point was Mr. Hart ever incarcerated on this sentence. Mr. Hart would report on Saturday and Sunday to different locations in California and conduct manual labor in lieu of his confinement. He would work in parks, highways and other areas around the San Bernardino area. Mr. Hart does not contest the fact that he was sentenced to 180 days in addition to his probation. However, Mr. Hart never served one day in confinement and under California Law he was granted participation in the

8

weekender/work release program and therefore under the facts of his case should not be considered to have been given a sentence of imprisonment for purposes of criminal history scoring under the guidelines.

California law allows for an individual in certain circumstances if they qualify to substitute work in lieu of confinement. California Penal Code Section 4024.2 states "(a) not withstanding any other law, the board of supervisors of any county may authorize the sheriff or other official in charge of county correctional facilities to offer a voluntary program under which any person committed to the facility may participate in a work release program pursuant to criteria described in subdivision (b), in which one day of participation will be in lieu of one day of confinement. The weekender/work release program at Glen Helen Rehabilitation Center was a part of this program that allowed a defendant if they qualified to work on the weekends for approximately 8 to 10 hours without being incarcerated at any point.

Whether a prior sentence counts for criminal history purposes is a question of federal, not state law. *United States v. Johnson,* 12 F.3d 760, 766 (8th Cir.1993). Specifically, U.S.S.G. § 4A1.2 provides definitions and instructions for computing criminal history, and it defines a sentence of imprisonment as a sentence of incarceration. U.S.S.G. § 4A1.2(b). To qualify as a sentence of imprisonment, the

9

defendant must have actually served a period of imprisonment on such sentence. U.S.S.G. § 4A1.2, comment. (n.2). Physical confinement without being free to leave is a key factor in determining whether a sentence is one of incarceration. *United States v. Morgan*, 390 F.3d 1072, 1074 (8th Cir. 2004) *see United States v. Vanderlaan,* 921 F.2d 257, 259 (10th Cir.1990). In *Morgan,* we applied this same standard to conclude that adult placement in a probation "violator's program" qualified as a prior sentence of imprisonment under § 4A1.1(b) and (e). *Id.*

Most recently the 8th Circuit looked at a similar situation in United States v. Stewart, 643 F.3d 259 (8th Cir. 2011). In *Stewart*, the Court affirmed the ruling of the District Court finding that one of Stewarts sentences should not be counted as imprisonment under the guidelines. *Id*. at 264. Citing *Allen* and noting that "[p]hysical confinement without being free to leave is a key factor in determining whether a sentence is one of incarceration," we concluded that placement in a facility resulting in "significant restraints on [ ] liberty," including the "most important aspect" of "not [being] free to leave," counted as "incarceration" under the guidelines. *Morgan,* 390 F.3d at 1074. "Here the district court made that key inquiry: Was Stewart physically confined without being free to leave while sentenced to the Bar None, Hennepin County Home School, and Glen Mills juvenile facilities? And it heard uncontested testimony that Stewart was confined and not free to leave while at Bar None and the Hennepin County Home School,

10

Case 4:13-cr-00084-DGK   Document 327   Filed 06/16/15   Page 10 of 16

but was not so confined while at Glen Mills." United States v. Stewart, 643 F.3d 259, 263-64 (8th Cir. 2011).

Mr. Hart believes under the line of cases in the 8th Circuit that one of the key factors in determining a sentence of imprisonment is whether or not he was free to leave. The evidence is clear that under California law that the weekenders/work release program is an alternative to incarceration. Mr. Hart at no point was confined in any facility. The evidence and the prior cases suggests that his sentence of 180 days in addition to his supervised probation should not be counted as a sentence of imprisonment under the guidelines based on these facts. Because it is not a sentence of imprisonment under 4A1.2, the proper scoring under the guidelines should be 1 criminal history point under 4A.1.1(c).

## VARIANCE FACTORS TO CONSIDER UNDER 18 U.S.C. § 3553(a)

A District Court must impose a sentence that is "sufficient, but not greater than necessary" to comply with a range of statutorily specified considerations. 18 U.S.C. § 3553(a)(1). There are several mitigating factors to be taken into consideration when sentencing Mr. Hart.

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant;**

Mr. Hart is a 41 year old man from Fontana, California. Mr. Hart was born in Los Angeles, California. He is a lifelong resident of California with the exception of the seven years in which he attended college and resided in Monticello, Arkansas. He is the proud father of five children that range in age from thirteen to twenty years of age. As evidenced by his letters of support his older two daughters have graduated high school during his incarceration and are attending college.

During college, Mr. Hart pledged and became a member of the Alpha Phi Alpha fraternity. While he was in school, he participated in volunteer work by going to retirement homes and helping care for the elderly. Mr. Hart has spoken often about the enjoyment he receives by helping take care of the elderly and those less fortunate. Upon release and during his incarceration he is hoping for some additional training in helping the elderly. This love and passion is further evidenced by the letters of support in describing Mr. Hart and his caring for elderly family members. He was also a part of an "Adopt a Highway" program that cleaned a part of I-425 in Arkansas. Mr. Hart has over 20 years of volunteer experience in coaching and refereeing AAU basketball and Little League Baseball.

Mr. Hart has worked several jobs in the last ten years. Mr. Hart was employed from 2001 to November 2003 as a residential counselor at three different locations. He was unemployed working odd jobs in 2004. In 2005, Mr. Hart

12

began working at the Acme Distribution Center as an office clerk and continued this job until 2008.  Mr. Hart worked through a temporary service in Chino, California doing warehouse work after his job at Acme Distribution Center.  He worked at several different warehouses during a three year time period from 2009 until 2012 when he began working at World Class Distribution.  He worked for APC (American Power Conversion) in Chino, California and another warehouse in Pamona, California that warehoused product for Sear's.  He was a forklift driver at both places.  This was a skill that he learned while he was employed at Acme Distribution.  He also worked doing this time through a temporary agency with Expedia Trucking in West Covina, California as a dispatcher.  Mr. Hart began working in 2012 at World Class Distribution in Fontana, California as a warehouse laborer until his detention in this case.

   Mr. Hart is the son of Junior Hart and Victoria Carter.  Although, Junior Hart was his biological father Mr. Hart considers his stepfather Manuel Carter his father as he was the one that primarily raised him with his mother.  Mr. Hart related in his presentence report that he never had contact with his biological father.  He believes that he had a normal childhood.  He did not suffer any mental or physical abuse.  Mr. Hart describes his family as a very loving and caring family.

13

In 2001, he moved back to California to be with his stepfather Manuel Carter as he was dying from cancer. Mr. Carter lost his battle with cancer in October 2001. This devastating event was a triggering event in the life of Mr. Hart. Upon learning the diagnosis of his stepfather, Mr. Hart turned to alcohol and drugs to help him cope with the stress of the situation. As evidenced by the PSR he had series of arrests and convictions that resulted from his poor decision making. These poor decisions and his choices to use drugs to cope with the stress of everyday life cost him his wife, family, career and now his liberty.

The over two years in confinement and the various programs he has participated in at CCA Leavenworth has given Mr. Hart the opportunity to truly reflect on his life and some of the poor choices that he has made. He makes no excuses for those mistakes and they haunt him daily. He has realized that many of his bad decisions that have resulted in criminal activities are tied in to difficult life choices and they loss of family members. Mr. Hart in prison has learned that he is in need of counselling and further education in helping him cope with the losses that we suffer in life. The majority of the family of Mr. Hart live in California and they are eager to assist Mr. Hart as a support system. He is hopeful to return back to Louisiana after incarceration to hopefully reunite with his ex-wife and his children.

**(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

In this case a sentence of 87 months would be a sentence that is sufficient but not greater than necessary to achieve all of the objectives raised in 18 USC § 3553(a)(2). As previously discussed, Mr. Hart readily admits that his actions in this case were wrong and he is already suffering consequences of his actions by receiving a felony record and being separated from his family and children. There is nothing to suggest that Mr. Hart is a violent individual. His letters of support suggest the opposite, that he is a loving, caring, and trustworthy individual.

He would ask this Court for a recommendation allowing him to participate in 500 hour drug treatment program and any other program that would help him in bettering his life and his family's lives. He would also ask the Court for a recommendation placing him in Texarkana, TX or as near to Monroe, Louisiana as possible to be able to see his ex-wife and children. Imprisonment of 87 months is a sentence that is sufficient but not greater than necessary in this case

# CONCLUSION

WHEREFORE, the Defendant, Vincent Dee Hart, asks the Court to sustain the objections of Mr. Hart and to sentence him to 87 months. In the alternative, Mr. Hart would ask the court if he does not sustain the objections that he grant him a variance to a sentence of 87 months as it is a sentence that is sufficient but not greater than necessary.

Respectfully submitted,

/s/ Mark A. Thomason
Mark A. Thomason, MO 56489
Law Office of Mark Thomason, LLC
929 Walnut St Suite 101
Kansas City, MO 64106
816.229.8686 / 816.229.9494 fax
mthomasonlaw@yahoo.com
*Counsel for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June, 2015, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which sent notification of such filing to all counsel of record.

/s/ Mark A. Thomason
*Counsel for Defendant*